IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY ADKINS, | * | |
| *Plaintiff,* | * | |
| v. | * | CIVIL NO. RDB-23-1768 |
| LUCAS BARNHART, *et al.,* | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Anthony Adkins ("Plaintiff" or "Adkins") initially filed this action in the Circuit Court for Washington County, and Defendants removed to this Court based on federal question jurisdiction under 28 U.S.C. § 1441(a) and § 1331. (ECF No. 1.) Adkins now brings this action in a five-count Complaint against Defendants Lucas Barnhart ("Barnhart"), Ryan LaRose[1] ("LaRose") (collectively "correctional officer Defendants"), Denise Gelsinger ("Gelsinger"), and Maryland Department of Public Safety and Correctional Services ("DPSCS") for claims arising from correctional officer Defendants' alleged use of excessive force against Adkins on June 29, 2020, while he was an inmate at Maryland Correctional Institution—Hagerstown ("MCI-H"). (ECF No. 4). Specifically, Adkins alleges use of excessive force in violation of 42 U.S.C. § 1983 against Defendants Barnhart and LaRose in their individual capacities (Count I); violation of 42 U.S.C. § 1983 on a theory of supervisor liability against Defendant Gelsinger in her individual capacity (Count II); violation of the

---

[1] The parties provide different spellings of LaRose. For consistency, the Court adopts the spelling used in Defendants' filings.

Maryland Declaration of Rights Articles 16 and 25 against all Defendants (Count III); negligent hiring, training, and supervision against Defendants Gelsinger and DPSCS (Count IV); and negligence against Defendants Gelsinger and DPSCS (Count V).[2] (*Id.*).

Pending before this Court is Defendants' Motion to Dismiss or, In the Alternative, For Summary Judgment (ECF No. 14).[3] The parties' submissions have been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Defendants' Motion (ECF No. 14) is **DENIED** as to Defendants Barnhart and LaRose and **GRANTED** as to Defendants Gelsinger and DPSCS. Specifically, Defendants' Motion (ECF No. 14) is GRANTED as to the claims against Defendant Gelsinger and Defendant DPSCS in Counts II, III, IV, and V. Accordingly Counts II, IV, and V are DISMISSED WITH PREJUDICE, and Count III is DISMISSED WITH PREJUDICE as to Defendants Gelsinger and DPSCS. Defendants' Motion is DENIED as to Count I and DENIED as to Defendants Barnhart and LaRose as to Count III. Defendants Barnhart and LaRose shall file an answer to Counts I and III within fourteen (14) days of the date of this Memorandum Opinion.[4]

---

[2] As explained below, all parties now agree that DPSCS should be dismissed from this action because it is a state agency entitled to sovereign immunity under the Maryland Tort Claims Act ("MTCA") as to the claims against it in Counts III, IV, and V. (ECF No. 17 at 7; ECF No. 22 at 5–6).

[3] Because this Court treats Defendants' Motion as a motion to dismiss, this opinion does not consider matters outside the pleadings, including the affidavits of Gelsinger and Plaintiff's counsel. (ECF No. 14-4; ECF No. 17-2.)

[4] Defendants Motion to Dismiss is captioned such that it applies to all claims as to all Defendants, beginning,

> "Defendants, Lucas Barnhart, Ryan LaRose, Denise Gelsinger, and the Department of Public Safety and Correctional Services ("Defendants"), by their undersigned counsel, hereby file this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and move to dismiss Plaintiff's Complaint as to all claims brought against the Defendants for failure to exhaust his administrative remedies, failure to state a claim, and because Defendants are immune from suit."

(ECF No. 14 at 1.) Defendants offer no argument, however, to support dismissal of the claims against Barnhart and LaRose (Count I and Count III). (*Id.*) Rather, they assert in a subsequent filing that the correctional officer Defendants "have not presented any argument that they should be dismissed from the action at this time." (ECF No. 22 at 1 n.1.) As explained below, this Court treats Defendants'

# BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 4) and accepted as true for the purpose of Defendants' Motion to Dismiss (ECF No. 14).

Adkins' claims stem from correctional officer Defendants' alleged use of unjustified and excessive force against him on June 29, 2020, while he was an inmate incarcerated at MCI-H in Hagerstown, Maryland.[5] (ECF No. 4 ¶¶ 19, 23, 32.) According to Adkins, the events leading to the alleged assault began around 4:30 P.M., while he was showering in MCI-H's H-1-unit showers. (*Id.* ¶ 19.) Adkins alleges that Barnhart, a correctional officer at MCI-H, sought to rush him and another inmate out of the shower, but Adkins told Barnhart that they had not been showering for very long. (*Id.*) Adkins alleges that he had just finished showering when Barnhart approached him and violently pushed him back into the shower area, stating "[y]ou can stay in that shower all night for all I care." (*Id.* ¶ 21.) According to Adkins, Barnhart left him there for some time before returning to handcuff his hands through the slot in the shower door. (*Id.* ¶ 22.) Barnhart then opened the door and pulled Adkins forward by the arm so that

---

Motion as applying to all claims against all Defendants, including Counts I and III against Barnhart and LaRose.

[5] At the time Adkins filed this action, he was no longer an inmate of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). (ECF No. 17 at 13.)

the handcuffs dug into his arms. (*Id.* ¶¶ 23–24.) Adkins alleges that Barnhart continued to hold his arm and began walking him—he presumed—to his cell. (*Id.* ¶ 24.)

Adkins alleges that during the walk, Barnhart violently spun Adkins around to face him before claiming that he was "just joking." (*Id.* ¶ 25). Adkins became frustrated and replied, "Don't be joking around with me, I don't joke with you CO's, you CO's can go fuck yourselves!" (*Id.* ¶ 26.) According to Adkins, Barnhart responded by violently grabbing Adkins' throat with his right hand and choking him until he began to pass out. (*Id.* ¶¶ 27–28.) Adkins alleges that Barnhart then spun him around and placed him in a choke hold before shoving him face-first into a steel gate with bars, causing Adkins to sustain broken teeth and split upper and lower lips. (*Id.* ¶¶ 29-30.) Adkins alleges that, as he began bleeding and spitting out pieces of his broken teeth, Barnhart removed his arm from Adkins' throat, placed his hand against the back of Adkins' head, and again shoved Adkins face first into the steel gate. (*Id.* ¶ 31.)

Adkins alleges that Defendant LaRose, also a correctional officer at MCI-H, then approached them. (*Id.* ¶ 33.) According to Adkins, LaRose grabbed his left arm and Barnhart grabbed his right arm, at which point he began to fear for his life. (*Id.* ¶ 34.) Barnhart and LaRose began escorting Adkins, pulling upward on his handcuffed arms so that he walked in a hunched-over position. (*Id.* at ¶ 35.) Adkins alleges that Barnhart and LaRose escorted him to the bottom of a stairway, where they slammed his head into another steel gate, causing a laceration to his forehead that bled profusely. (*Id.* at ¶ 36.) Barnhart and LaRose then allegedly dragged Adkins down a basement corridor while he was still in a bent over position, causing him to have trouble breathing. (*Id.* ¶ 37.) Adkins alleges that he told Barnhart and LaRose that he could not breathe, and they responded by letting go of his arms so that he fell to the floor.

(*Id.* ¶¶ 37–38.) Barnhart and LaRose then stood Adkins up and escorted him to the Medical Unit on the second floor of MCI-H.[6] (*Id.* ¶ 39.) Adkins alleges that surveillance cameras captured at least some portion of these events. (*Id.* ¶ 40.)

According to Adkins, when he arrived at the Medical Unit another correctional officer, apparently shocked at his appearance, noted that Barnhart and Larose had not implemented any emergency alert, code, or notification to Central Command or called for assistance from other officers in the H-1 unit. (*Id.* ¶ 41.) In the Medical Unit, Adkins' injuries were photographed and examined, and an on-duty physician determined that he needed to be taken to the emergency department at Meritus Medical Center in Hagerstown, Maryland. (*Id.* ¶ 42.) There, Adkins received four stitches to his upper lip, six stitches to his lower lip, and a butterfly bandage and glue to close the laceration on his forehead. (*Id.* ¶ 43.) Adkins alleges that he continues to suffer broken teeth, chronic headaches, chronic vision impairment, insomnia, anxiety, memory loss, post-traumatic stress disorder, and severe and emotional distress as a result of these events. (*Id.* ¶ 44.)

According to Adkins, at some point on or about June 29, 2020, Barnhart contacted supervision to report that Adkins' injuries had occurred when Adkins attempted to break free while he was being escorted. (*Id.* ¶ 47.) Barnhart allegedly reported that Adkins had "stopped walking and planted his left foot" before beginning to break free, leading Barnhart to use "a wing arm defensive tactic to attempt to regain control." (*Id.* ¶ 48.) According to Adkins, Barnhart reported that Adkins hit his face against the metal grille of the H-1 chow hall area

---

[6] Adkins alleges that Barnhart and LaRose acted in their authority as correctional officers on active duty—including wearing the apparel of DPSCS and using DPSCS resources—throughout these events. (*Id.* at ¶ 46.)

when he attempted to escape Barnhart's control by turning away. (*Id.* ¶ 49.) Adkins alleges that he was charged with disciplinary violations of three inmate rules, and he pled guilty to violation of a rule prohibiting demonstration of disrespect, insolence, or vulgar language.[7] (*Id.* ¶ 51.) According to Adkins, DPSCS did not reprimand LaRose and Barnhart despite their alleged history of extrajudicial punishment under the oversight of Defendant Gelsinger, who was the warden of MCI-H at the time of these events.[8] (*Id.* ¶¶ 55–56.)

On July 7, 2020, Adkins filed a Request for Administrative Remedy asking that Barnhart and LaRose be reprimanded for their actions, but DPSCS declined to reprimand them and allowed them to continue to have contact with prisoners. (*Id.* ¶¶ 54–56.) According to Adkins, DPSCS and Gelsinger knew that Barnhart and LaRose "had a history of retaliatory excessive force" but failed to properly discipline them. (*Id.* ¶ 57). Additionally, Adkins alleges that the state of Maryland failed to pursue administrative or criminal remedies against Barnhart and LaRose. (*Id.* ¶ 59). On or about April 7, 2021, Adkins filed a State Tort Claims Act Notice with the Maryland State Treasurer. (*Id.* ¶ 60.)

On May 22, 2023, Adkins initiated the instant action in the Circuit Court for Washington County. (ECF No. 1 ¶ 3.) By that time, he was no longer incarcerated.[9] (ECF No. 4; ECF No. 17 at 13.) Adkins' Complaint lodges five counts against the Defendants: violation

---

[7] Adkins alleges that he was charged with violating Inmate Rule 312 (interfering with or resisting a search of a person); Inmate Rule 100 (engaging in a disruptive act); and Inmate Rule 410 (demonstrating disrespect, insolence or use of vulgar language). (ECF No. 4 ¶ 50.) According to Adkins, this disciplinary investigation produced written witness statements that support his description of the incident. (*Id.* ¶¶ 52–53.)

[8] Gelsinger served as warden of MCI-H from March 2017 until September 1, 2020. (ECF No. 17 at 11.)

[9] Although Defendants initially contended that Adkins improperly failed to comply with the Prisoner Litigation Act's ("PLA") exhaustion requirements before filing the instant action, MD. CODE ANN. CTS. & JUD. PROCS. § 5-1003(c), the parties now agree that Adkins was not a "prisoner" within the definition provided in the PLA at the time that he filed this suit. (ECF No. 17 at 13; ECF No. 22 at 2 n.2.) Accordingly, Defendants concede that he is not subject to the PLA's requirement that prisoners exhaust all administrative remedies, including judicial review, before filing civil suit. (ECF No. 17 at 13; ECF No. 22 at 2 n.2.)

of 42 U.S.C. § 1983 against Defendants Barnhart and LaRose in their individual capacities (Count I); violation of 42 U.S.C. § 1983 on a theory of supervisor liability against Defendant Gelsinger in her individual capacity (Count II); violation of Maryland Declaration of Rights Articles 16 and 25 against all Defendants (Count III); negligent hiring, training, and supervision against Defendants Gelsinger and DPSCS (Count IV); and negligence against Defendants Gelsinger and DPSCS (Count V). (ECF No. 4.)

On June 30, 2023, DPSCS properly removed the action to this Court.[10] (ECF No. 1.) On October 5, 2023, Defendants filed a Motion to Dismiss or, in the Alternative, For Summary Judgment as to all claims ("Defendants' Motion") (ECF No. 14). Plaintiff responded in opposition on November 19, 2023, (ECF No. 17), and Defendants replied on January 25, 2024, (ECF No. 22). Defendants' Motion (ECF No. 14) is ripe for review.

For the reasons explained below, Defendants' Motion (ECF No. 14) is DENIED as to Defendants Barnhart and LaRose and GRANTED as to Defendants Gelsinger and DPSCS.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[10] This Court has federal question jurisdiction over Counts I and II under 28 U.S.C. § 1343 and supplemental jurisdiction over the state-law claims in Counts III, IV, and V under 28 U.S.C. § 1367(a). Defendants Barnhart, LaRose, and Gelsinger joined removal, which Adkins did not oppose, on July 31, 2020. (ECF No. 9; ECF No. 10; ECF No. 11.)

defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec'y Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

**ANALYSIS**

In their Motion to Dismiss, Defendants move to dismiss all Counts as to all Defendants. (ECF No. 14). As an initial matter, however, all parties now agree that Department of Public Safety and Correctional Services ("DPSCS") is entitled to sovereign

immunity as a state agency as to Counts III, IV, and V.[11] (ECF No. 14; ECF No. 17.) This Court will address the claims raised against the remaining Defendants in turn, and some counts are consolidated where appropriate.

## I. Claims Against Defendants Barnhart and LaRose (Counts I and III)

Although Defendants' Motion moves to dismiss all claims and is captioned such that it applies to all Defendants, Defendants offer no arguments to support dismissal of Count I or Count III as to Defendants LaRose and Barnhart.[12] (ECF No. 14.) Rather, in their response to Plaintiff's opposition to Defendants' Motion, Defendants concede that Barnhart and LaRose "have not presented an argument that they should be dismissed from the action at this time" and seek to "reserve their right to file a subsequent dispositive motion, asking that they be dismissed at that time."[13] (ECF No. 22 at 1 n.1.) As this statement contradicts the language and caption of Defendants' Motion, this Court treats Defendants' Motion as applying to Adkins' claims against Barnhart and LaRose.

---

[11] The Maryland Tort Claims Act ("MTCA") preserves a state agency's sovereign immunity from "liability in tort for a tortious act or omission that is within the scope of the public duties of the state personnel and is made without malice or gross negligence." MD. CODE ANN., STATE GOV'T § 12-104(b); CTS. & JUD. PROCS. § 5-522(b). MTCA immunity extends to negligent, intentional, and constitutional torts that are not conducted with malice or gross negligence. *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 849 (D. Md. 2012); *Lee v. Cline*, 384 Md. 245, 266 (2004); *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 387 (D. Md. 2018). Apparently agreeing that he cannot show that DPSCS acted with the malice or gross negligence required to cede its immunity under the MTCA, Adkins concedes that DPSCS is an improper defendant to this action. (ECF No. 17 at 5.)

[12] In their Motion, Defendants stated "Defendants, Lucas Barnhart, Ryan LaRose, Denise Gelsinger, and the Department of Public Safety and Correctional Services" move to "dismiss Plaintiff's Complaint as to all claims brought against the Defendants." (ECF No. 14 at 1.)

[13] If Defendants are asserting that Barnhart and LaRose have not joined the Motion to Dismiss, then Barnhart and LaRose should have filed their Answer within seven days of removal to this Court on June 30, 2023. FED. R. CIV. PROC. 81(c)(2) ("[A] defendant who did not answer before removal must answer or present other defenses or objections within the longest of these periods: (A) 21 days of receiving (. . .) a copy of the initial pleading; (B) 21 days after being served with the summons for the initial pleading (. . .); or 7 days after notice of removal is filed."). No answer has been filed, and this Court treats Defendants' Motion as applying to Defendants Barnhart and LaRose.

Accepting as true all well-pleaded facts in Adkins' Complaint, Adkins has sufficiently pleaded claims for relief as to Barnhart and Larose. Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). An excessive force claim implicates rights protected under the Eighth Amendment, incorporated against the states by the Fourteenth Amendment. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("The Eighth Amendment … serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified.").

As Judge Hollander of this Court has noted, the Supreme Court of Maryland "has 'consistently construed [Articles 16, 24, and 25 of the Maryland Declaration of Rights] as being *in pari materia* with their Federal counterparts.'" *Maryland Restorative Justice Initiative v. Hogan*, ELH-16-1021, 2017 WL 467731, at *8 (D. Md. Feb. 3, 2017) (quoting *Evans v. Maryland*, 914 A.2d 25, 67 (Md. 2006) (alteration in original)). Accordingly, Articles 16 and 25 of the Maryland Declaration of Rights are *in para materia* with the Eighth Amendment. *Smith v. Maryland*, RDB-07-1135, 2009 WL 2878538 at *7 (D. Md. Aug. 26, 2009) (citing *Arvanis v. Somerset Cnty.*, 664 A.2d 888, 894-95 (Md. 1995)); *Jordan v. Davis*, ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023). Because the correctional officer Defendants' alleged use of excessive force

forms the basis of both Adkins' § 1983 claim (Count I) and his state constitutional claim (Count III), the analysis of these claims is identical.

Defendants have not yet contested Adkins' allegations that Barnhart and LaRose used excessive force against him in violation of his federal and state constitutional rights.[14] Adkins, however, has provided detailed allegations of Barnhart and LaRose repeatedly slamming his head against a metal grate while he was handcuffed—causing broken teeth and facial lacerations severe enough to require emergency medical treatment—while on duty as correctional officers at MCI-H. Additionally, Adkins' allegation that the correctional officer Defendants failed to call for backup or report an emergency supports his claim that the use of force was excessive and unjustified under the circumstances.

Because Defendants have raised no arguments in support of their Motion to dismiss Counts I and III as to Defendants Barnhart and LaRose, Defendants' Motion is DENIED as to Defendants Barnhart and LaRose. Specifically, Defendants' Motion is DENIED as to Count I and Count III as to Defendants Barnhart and LaRose. Barnhart and LaRose are instructed to file their answer within fourteen days of the date of this Memorandum Opinion.

---

[14] To the extent Defendants argue that Adkins failed to properly exhaust administrative remedies before raising the state constitutional claims in Count III, their argument fails. (ECF No. 14 at 16.) Although plaintiffs must comport with the MTCA's procedural requirements before filing an action raising state constitutional torts, Adkins has met those procedural requirements here. *See Prince George's Cnty. Md. v. Longtin*, 988 A.2d 20, 33 (Md. 2010) (explaining even a claimant alleging a constitutional tort must "compl[y] with the procedural requirements" of the MTCA); MD. CODE ANN., STATE GOV'T § 12-106(b) ("[A] claimant may not institute an action under this subtitle unless: (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury … (2) The Treasurer or designee denies the claim finally; and (3) the action is filed within 3 years after the cause of action arises"). Adkins filed a Notice of Claim in compliance with the MTCA and received a formal denial of his Notice of Claim on April 25, 2023, two months before he filed this action. (ECF No. 4 ¶¶ 15-18.)

## II. Claims against Defendant Gelsinger

This Court addresses the remaining counts as to Defendant Gelsinger in turn. For the reasons explained below, Adkins fails to plead facts sufficient to support a claim for relief against Gelsinger.[15]

### A. Supervisor Liability Under 42 U.S.C. § 1983 (Count II)

Adkins fails to state a plausible claim for relief under § 1983 as to Gelsinger. In Count II, Adkins alleges that Gelsinger, in her individual capacity, is liable under § 1983 on a theory of supervisor liability for violating Adkins' rights under the Eighth and Fourteenth Amendments. Adkins alleges that Gelsinger knew that Barnhart and LaRose were engaged in conduct that posed a pervasive and unreasonable risk of injury to inmates, including Adkins, and her response to such knowledge was so inadequate as to show deliberate indifference. Adkins offers no support for this conclusory allegation regarding Gelsinger's knowledge.

---

[15] Qualified immunity under § 1983 and statutory immunity under the Maryland Tort Claims Act ("MTCA") are alternative bases for dismissal of Adkins' claims against Gelsinger. A government official sued in her individual capacity in a § 1983 action is entitled to qualified immunity unless (1) her conduct violated the plaintiff's constitutional or statutory rights *and* (2) those constitutional or statutory rights were clearly established such that, at the time of the violation, a reasonable person would have understood that her actions violated a constitutional right. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). Here, Gelsinger would be entitled to qualified immunity as to Adkins' § 1983 claim against her (Count II) because Adkins has failed to sufficiently allege that Gelsinger understood that she was violating his constitutional rights under the Eighth Amendment.

Similarly, under the MTCA, Gelsinger is entitled to statutory immunity as to the state negligence and constitutional tort claims alleged against her in Counts III, IV, and V. MD. CODE ANN. CTS. & JUD. PROC. § 5-522(b). Under the MTCA, a state employee is immune from liability for negligent and constitutional torts "made without malice or gross negligence." *Id.* A state employee acts with gross negligence only where she "inflicts injury intentionally or is so utterly indifferent to the rights of others that [s]he acts as if such rights did not exist." *Newell v. Runnels*, 967 A.2d 729, 764-65 (Md. 2009) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). Here, Adkins has not sufficiently alleged that Gelsinger acted maliciously or with gross negligence. Accordingly, even if Adkins had pleaded facts sufficient to support his claims, Gelsinger would be entitled to immunity as to each of the claims alleged against her (Counts II, III, IV, and V).

Adkins' § 1983 claim against Gelsinger fails because there is no vicarious liability under § 1983, and, to the extent that Adkins alleges Gelsinger is personally liable, Adkins fails to sufficiently plead that she was deliberately indifferent to pervasive unconstitutional misconduct by the correctional officer Defendants. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id. See also Jordan*, ELH-22-1541, 2023 WL 2478862, at *11; *Wilcox v. Brown*, 887 F.3d 161, 170 (4th Cir. 2017); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

To successfully invoke supervisor liability as to a § 1983 claim, therefore, a plaintiff must allege three elements: (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiff; (2) the supervisor's response to that knowledge was so inadequate that it amounted to deliberate indifference or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Because a subordinate's conduct is only pervasive if it has occurred on multiple occasions, pleading a single incident or even isolated incidents is insufficient to demonstrate the first element of supervisor liability under § 1983. *Jordan*, ELH-22-1541, 2023 WL 2478862, at *12. Moreover, a supervisor's "mere knowledge" of a subordinate's unconstitutional conduct cannot give rise to supervisor liability under § 1983. *Id.* (citing *Iqbal*, 556 U.S. at 677.)

Here, Adkins fails to sufficiently allege that Gelsinger was aware of pervasive misconduct by Barnhart and LaRose. Adkins does not plead any facts related to other incidents in which Barnhart and LaRose engaged in similar misconduct. Rather, he attempts to allege that Gelsinger should be liable based on this single incident of alleged misconduct. Without any factual allegations to support Gelsinger's alleged knowledge—actual or constructive—of prior instances of misconduct, Adkins fails to sufficiently allege the first element of supervisory liability under § 1983.

Adkins' conclusory allegations amount to the "threadbare recital" of the elements of a cause of action that the Supreme Court has deemed insufficient to support a claim. *Iqbal*, 556 U.S. at 678. Because one incident cannot form the basis of a supervisor's liability under § 1983, Adkins has failed to allege facts sufficient to support his § 1983 claim against Gelsinger. Accordingly, Defendants' Motion is GRANTED as to Count II, and Count II is DISMISSED WITH PREJUDICE.

### B. Excessive Force in Violation of Articles 16 and 25 of the Maryland Declaration of Rights, (Count III)

As discussed above, Articles 16 and 25 of the Maryland Declaration of Rights are *in para materia* with the Eighth Amendment as incorporated against the states by the Fourteenth Amendment. *Smith v. Maryland*, RDB-07-1135, 2009 WL 2878538 at *7 (citing *Arvanis v. Somerset Cnty.*, 664 A.2d 888, 894-95 (Md. 1995)); *Jordan*, ELH-22-1541, 2023 WL 2478862, at *1 n.4. Accordingly, any analysis regarding Eighth Amendment claims—including those brought under § 1983—applies equally to claims under the Maryland Declaration of Rights Articles 16 and 25. *Gough v. Semexan*, BPG-21-14, 2022 WL 2073855, at *6 (D. Md. June 9,

2022) (citing *Robinson v. Pytlewski*, No. 8:19-cv-01025-PX, 2020 WL 607030, at *5 (D. Md. Feb. 7, 2020)).

Here, as discussed *supra*, Adkins has failed to allege facts sufficient to support an Eighth Amendment claim against Gelsinger. Because Articles 16 and 25 of the Maryland Declaration of Rights are construed coextensively with the Eighth Amendment, Adkins' state constitutional claims against Gelsinger fail for the same reasons as his § 1983 claim alleging that she violated his Eighth Amendment rights. Defendants' Motion is GRANTED as to Count III as to Defendant Gelsinger.[16] Count III is DISMISSED WITH PREJUDICE as to Defendant Gelsinger.

### C. Negligent Hiring, Training, and Supervision (Count IV)

Like any action in negligence, a successful negligent hiring, training, and supervision claim requires a plaintiff to prove duty, breach, causation, and damages. *Younger v. Maryland*, RDB-16-3269, 2017 WL 3608184, at *6 (D. Md. Aug. 22, 2017) (citing *Asphault & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 571 (Md. Ct. Spec. App. 2015), *aff'd*, 133 A.3d 1143 (Md. 2016)). Specifically, a plaintiff must allege that (1) an employee's tortious conduct caused his injury; (2) "the employer knew or should have known . . . that the employee was capable of inflicting harm of some type;" (3) the employer failed to use proper care in hiring or training the employee; and (4) the employer's breach of her duty proximately caused the plaintiff's injury. *Jarvis v. Wells Fargo Bank, N.A.*, DLB-21-0687, 2022 WL 1663568, at *6 (D. Md. May

---

[16] As discussed *supra*, Defendants' Motion is DENIED as to Count III with respect to Defendants Barnhart and LaRose.

25, 2022) (quoting *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 484 (D. Md. 1999)).

Although Adkins alleges sufficient facts to show that his injuries were caused by an employee of MCI-H, he raises no specific allegations as to Gelsinger's role in hiring, supervising, or training correctional officers. Nor does Adkins provide facts regarding prior violent conduct by the correctional officer Defendants that would have placed Gelsinger on notice of their potential to harm inmates at MCI-H. Rather, Adkins makes the conclusory allegations that Gelsinger had a duty of reasonable care in supervision and training, knew of the correctional officer Defendants' alleged violent tendencies, and unreasonably failed to adequately supervise and train personnel at MCI-H. Adkins provides no specific facts to support these allegations other than stating that Gelsinger was a state employee at all relevant times. Absent more, these general assertions are insufficient to support a claim of negligent hiring, training, and supervision against Gelsinger.

Therefore, Defendants' Motion is GRANTED as to Count IV, and Count IV is DISMISSED WITH PREJUDICE.

### D. Negligence (Count V)

For similar reasons, Adkins also fails to adequately state a claim for relief as to his negligence claim against Gelsinger (Count V). To adequately state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach actually and proximately caused the plaintiff's injury. *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007). "Merely stating that a duty existed, or that it was breached, or that the breach caused the injury does not suffice" to

adequately plead a claim of negligence. *Horridge v. St. Mary's County Dep't of Social Servs.*, 854 A.2d 1232, 1238 (Md. 2004). Rather, a plaintiff must allege facts sufficient to support each element of a negligence claim. *Id.*

Here, Adkins' Complaint is devoid of facts that would support the breach element of his negligence claim. Adkins alleges that Gelsinger negligently failed to act despite her knowledge of the correctional officer Defendants' alleged prior violence against inmates and correctional officers' more general practice of retribution against inmates at MCI-H. Adkins fails, however, to allege any facts that would support either the correctional officer Defendants' alleged history of retaliation against inmates of MCI-H or Gelsinger's knowledge of that history. Absent facts to support Gelsinger's knowledge of the correctional officer Defendants' history of violence against inmates, Adkins cannot show that Gelsinger unreasonably failed to protect him from a foreseeable harm.

Accordingly, Defendants' Motion is GRANTED as to Count V, and Count V is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 14) is GRANTED as to Defendants Gelsinger and Maryland Department of Public Safety and Correctional Services and DENIED as to Defendants Barnhart and LaRose. Counts II, IV, and V are DISMISSED WITH PREJUDICE as to all Defendants. Count III is DISMISSED WITH PREJUDICE as to Defendants Gelsinger and Maryland Department of Public Safety and Correctional Services. Defendants Barnhart and LaRose shall file an answer to Adkins' remaining claims for violation of 42 U.S.C. § 1983

(Count I) and violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count III) within fourteen (14) days of the date of this Memorandum Opinion.

Dated: September 3rd, 2024        __/s/_____
                                  Richard D. Bennett
                                  United States District Judge